ORIGINAL

FILED IN CLERK'S OFFICE
U S D C Atlanta

DEC 03 2007

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

WSD

| | |
|---|---|
| C. RICHARD LINDLER | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| MICHAEL SWEET, | ) |
| KAREN SWEET, and | ) |
| FINANCIAL PARTNERS, INC., | ) |
| | ) |
| Defendants. | ) |

Civil Action File
No.: **1:07-CV-2988**

---

**COMPLAINT FOR FRAUD, BREACH OF CONTRACT, ANTICIPATORY
BREACH OF CONTRACT,
CONVERSION, UNJUST ENRICHMENT, AND VIOLATIONS OF THE
SECURITIES ACT OF 1933, THE SECURITIES EXCHANGE ACT OF
1934, RULE 10b-5, AND THE SOUTH CAROLINA UNIFORM
SECURITIES ACT**

---

COMES NOW C. Richard Lindler, Plaintiff in the above-styled action and

files this Complaint showing the Court as follows:

**Nature of the Action**

1.

This is an action by C. Richard Lindler, who at all times relevant to the

allegations of this Complaint was a resident of Chapin, South Carolina. Based on

numerous material misrepresentations and omissions of material fact made by the

Defendants to C. Richard Lindler ("Mr. Lindler"), he invested $12,500.00 with Financial Partners, Inc. ("FPI"). In its offering document, FPI represented that with Mr. Lindler's $12,500.00, FPI would purchase a portion of a life insurance policy that would be worth $18,000.00 within four (4) years from the date of purchase. Instead, FPI invested some of Mr. Lindler's money in a bogus viatical company by the name of Accelerated Benefits Corporation, or a later iteration, ABC Viaticals, Inc. ("ABC"), and upon information and belief, Michael Sweet and Karen Sweet converted the remainder to their own use.

By making said material representations and doing said acts, Defendants committed fraud upon Plaintiff, breached their contract with Plaintiff, anticipatorily breached other portions of their contract with Plaintiff, unlawfully converted Plaintiff's investment funds to their own use, were unjustly enriched with Plaintiff's investment funds, and violated the Securities Act of 1933, the Securities Exchange Act of 1934, Rule 10b-5, and the South Carolina Uniform Securities Act. Plaintiff seeks rescission, compensatory and punitive damages, attorney's fees, and a trial by jury.

## Parties

2.

Plaintiff, C. Richard Lindler is a resident of South Carolina.

3.

Defendant Financial Partners, Inc. is a South Carolina for-profit corporation that was incorporated on or about January 20, 2004, and at times relevant to the allegations of this Complaint, had a principal place of business at 2920 Marietta Highway, Suite 106, Canton, Georgia 30114.

4.

Defendant Michael Sweet ("Mr. Sweet" or "Sweet") is an individual who is a resident of Cherokee County, Georgia. Upon information and belief, at all times relevant to the allegations of this Complaint, Sweet was the Chief Executive Officer of FPI and its control person.

5.

Defendant Karen Sweet ("Mrs. Sweet") is an individual who is a resident of Cherokee County, Georgia. Upon information and belief, at all times relevant to the allegations of this Complaint, Mrs. Sweet was the Secretary of FPI.

## **Jurisdiction**

6.

This Court has jurisdiction over this action pursuant to § 22(a) of the Securities Act of 1933, § 27 of the Securities Exchange Act of 1934, and 28 U.S.C. § 1331. Defendants, directly and indirectly, made use of the mails and of the

means and instrumentalities of interstate commerce in connection with the acts, practices and courses of business described in this Complaint. This Court has supplemental jurisdiction over all other claims in this Complaint pursuant to 28 U.S.C. § 1367.

## Venue

7.

Venue in this district and division is proper pursuant to 28 U.S.C. § 1391(b) because Defendants FPI, Mr. Sweet and Mrs. Sweet reside in this district and division.

## Allegations Relating to Mr. Lindler

8.

On or about January 18, 2005, Sweet solicited Mr. Lindler to invest with FPI.

9.

In connection with their offers and sales of unregistered securities to Mr. Lindler, as well as at least ten other South Carolina investors, FPI and Mr. and Mrs. Sweet employed a seven (7) page document titled "Financial Partners Policy Funding Agreement" (hereinafter "Funding Agreement"). A true and correct copy

of the Funding Agreement (with personal information redacted) is attached hereto as Exhibit A.

10.

Mr. Lindler completed pages 1, 3, 4, 5, 6, and 7 of the Funding Agreement indicating his biographical information as well as the amount of his investment, the type of funds to be used, and the term of his investment.

11.

Pursuant to the terms of the Funding Agreement, FPI represented to Mr. Lindler that in four (4) years his $12,500.00 investment would grow by 44% to $18,000.00.

12.

Because FPI invested a portion of Mr. Lindler's $12,500.00 in ABC[1], a bogus viatical company, while the rest was used to line Mr. Sweet and Mrs. Sweet's pockets, it is all but certain that Mr. Lindler will not earn 44% on his investment. Worse yet, it is all but certain that in the best case scenario, Mr. Lindler will only receive 10¢ on the dollar or $1,250.00 of his original $12,500.00 investment. So instead of receiving $18,000.00 in exchange for his $12,500.00 investment, as Defendants represented, Mr. Lindler will only receive $1,250.00, **if he is lucky**.

---

[1] On November 17, 2006, the Securities and Exchange Commission filed a Complaint against ABC and its principals alleging violations of Sections 5(a), 5(c), and 17(a) of the Securities Act and violations of Section 10(b) of the Exchange Act and Rule 10b-5 as well as a claim against Relief Defendants. Securities and Exchange Commission v. ABC Viaticals, Inc. et al., in the United States District Court for the Northern District of Texas, Dallas Division, 3-06CV2136-P. On that same day, and by agreement of the parties, the court issued an Agreed Preliminary Injunction, Order Freezing Assets, Order Requiring an Accounting and Order Requiring Preservation of Documents and an Order Appointing Receiver. As a result of those Orders, all of the assets of the Defendants and Relief Defendants were frozen. Munson Living Trust does not know the extent of Defendants' involvement with ABC or the extent to which the unlawful acts of Defendants facilitated ABC's unlawful enterprise.

## **"Financial Partners Policy Funding Agreement"**

### 13.

In an effort to offer and sell securities, that the Defendants were wholly unqualified to offer and sell, they employed the Funding Agreement. To accomplish their goals of deceiving Mr. Lindler, as well as other investors, Defendants, through their Funding Agreement, made numerous material misrepresentations and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading to Mr. Lindler, as well as other investors.

### 14.

On page 1 of the Funding Agreement in relevant part, FPI represented to Mr. Lindler, as well as other investors, that:

> Financial Partners Trust, Inc., an irrevocable trust has been formed; (a) to hold Policies on behalf of Purchaser; (b) to engage in those activities necessary, convenient, or incidental thereto, including but not limited to, receipt from the insurance company(ies) of the death benefits of matured Policy(ies) or portions thereof; and (c) disbursal of same to Purchaser in the amount(s) specified in this Agreement...

### 15.

In fact, the Financial Partners Trust, Inc. is **revocable**. A true and correct copy of the Financial Partners, Inc. Trust Agreement is attached hereto as Exhibit B. Section 4a of the Financial Partners, Inc. Trust Agreement states:

Revocability. This Trust shall be revocable and FPI hereby expressly has the right and power, whether alone or in conjunction with others, in whatever capacity, to alter, amend, revoke, or terminate the Trust, or any of the terms of this Agreement, in whole or in part, and to designate the persons who shall possess or enjoy the Trust property, or the income there from.

16.

So while FPI represented to Mr. Lindler that his money would be safely held in an irrevocable trust, in actuality, FPI had the right "to designate the persons who shall possess or enjoy the Trust property, or the income there from." Unfortunately for Mr. Lindler, those persons were the principals of ABC and Mr. Sweet and Mrs. Sweet.

17.

Page 2 of the Funding Agreement contains the statement, "FPI and Purchaser agree that their relationship is one of agent and principal, and that the transactions completed under this Agreement does not constitute the sale of a security."

18.

Pursuant to SC ST § 35-1-1550, "[a]ny condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of [the South Carolina Uniform Securities Act] or any rule or order [t]hereunder is void."

19.

Pursuant to SC ST § 35-1-20 (15), "'Security' means any . . . investment contract . . . ." Pursuant to S.E.C. v. Life Partners, Inc., 102 F.3d 587 (D.C. Cir. 1996), the products offered and sold by FPI (viatical settlement or life settlement contracts) are securities according to the investment contract analysis set forth in SEC v. W.J. Howey Co, 328 U.S. 293, 301, 66 S. Ct. 1100, 90 L.Ed. 1244 (1946).

20.

Accordingly, FPI had no authority to force Mr. Lindler to agree that the Funding Agreement "d[id] not constitute the sale of a security."

21.

On page 2 of the Funding Agreement, under the heading "Ownership and Beneficiary," FPI represented to Mr. Lindler, as well as other investors, that:

> Financial Partners Trust shall be named the owner or irrevocable beneficiary or irrevocable assignee of the death benefits on the Policy(ies) or portion of Policy(ies) on behalf of the Purchaser, through this Agreement. In fulfillment of the provisions of the Escrow Agreement and this Agreement, Purchaser shall be issued a Certificate of Irrevocable Assignment to a Policy(ies). The assignment shall be evidence of the Purchaser's irrevocable beneficial interest in specified Policy(ies) agreed upon by the Purchaser and FPI. Said interest(s) cannot be transferred without the express written consent of the Purchaser. Unless stated otherwise herein, the administrative ownership of the designated Policy(ies) shall be recorded in the name of the Health Settlement Provider or Financial Partners Trust.

22.

In fact, FPI did not purchase a policy or a portion thereof for Mr. Lindler as

Defendants represented.  Instead, they turned a portion of Mr. Lindler's investment

over to ABC and lined their pockets with the remainder.

23.

On pages 2 through 3 of the Funding Agreement, under the heading

"Representation by FPI and Affiliates," FPI and the contracted affiliates accept the

responsibility for the performance of the duties below:

1. Certification to Purchaser that the medical records of the insured(s) and acquired information of the designated Policy(ies) have been reviewed and that the following statements are true and correct.
   a. The designated Policy(ies) was issued by an insurance company(ies) with an excellent or superior rating by the A.M. Best Guide to Insurance.
   b. The designated Policy(ies) purchased will be verified as incontestable and will exceed any and all suicide periods.
   c. An independent third party medical review has been obtained and reviewed to confirm and verify the diagnosis and limited life expectancy of the insured.  The aforementioned review is included in the Insured's file maintained by FPI.
   d. The total death benefit of the designated Policy(ies) is/are accurate as confirmed by the insurer.
   e. The designated Policy(ies) is/are assignable, transferable, enforceable, and, except as may be specifically referenced elsewhere in this Agreement, is/are not subject to any special requirements, limitations or liens.
2. Prepare and maintain all files, confidential and non-confidential, containing data and documents pertaining to Purchaser and designated Policy(ies) .

3. Get the proper signatures on all documents necessary to procure beneficial interest regarding the designated Policy(ies) on behalf of Purchaser.

4. FPI has retained the firm of Krell and Associates, P.A. to perform third party verifications of duties of FPI.

5. Track the insured's condition; submit reports to the Purchaser regarding the insured's condition.

6. The Trust will:
   a. be the owner and/or irrevocable beneficiary of the death benefits of the Policy(ies) or irrevocable assignee of a trust;
   b. maintain the premium payments.

7. FPI will:
   a. provide the allocation of Purchaser's funds to specific policies purchased;
   b. provide the Certificate of Irrevocable Assignment;
   c. execute an irrevocable beneficiary assignment that has been endorsed by the insurance company to the Trust for the Policy(ies). Upon receipt of the Assignment, the Escrow Agent will instruct the Trust's trustee to issue a Certificate of Irrevocable Assignment to the Purchaser.
   d. provide Purchaser with a Health Settlement investment summary containing copies of all executed documents, including this Financial Partners Policy Funding Agreement, the certificate representing ownership and the certificate representing beneficiary rights of specific Policy(ies) held within the Trust. Also included are the insurance company's name and policy number and any other documents required to complete each Health Settlement transaction.
   e. deposit funds adequate enough to pay at least one hundred percent (100%) of premiums that may become due during the life expectancy plus one year of the insured. Krell & Associates, PA is instructed to remit payment of Premiums that may become due and payable on a timely basis.
   f. apply for the death benefit upon the insured's passing. Upon Financial Partners Trust receiving payment from the insurer, the trustee will issue payment directly to the Purchaser.

(The "Duties.")

24.

In fact, FPI and its affiliates failed to perform most, if not all of the Duties.

25.

FPI and its affiliates failed to provide

Certification to Purchaser that the medical records and acquired information of the designated Policy(ies) have been reviewed and that the following statements are true and correct.

a. The designated Policy(ies) was issued by an insurance company(ies) with an excellent or superior rating by the <u>A.M. Best Guide to Insurance.</u>

b. The designated Policy(ies) purchased will be verified as incontestable and will exceed any and all suicide periods.

c. An independent third party medical review has been obtained and reviewed to confirm and verify the diagnosis and limited life expectancy of the insured. The aforementioned review is included in the Insured's file and maintained by FPI.

d. The total death benefit of the designated Policy(ies) is/are accurate as confirmed by the insurer.

e. The designated Policy(ies) is/are assignable, transferable, enforceable, and, except as may be specifically referenced elsewhere in this Agreement, is/are not subject to any special requirements, limitations or liens.

26.

FPI and its affiliates failed to "Prepare and maintain all files owned by Financial Partners Trust, confidential and non-confidential, containing data and documents pertaining to Purchaser and designated Policy(ies)."

27.

FPI and its affiliates failed to "Get the proper signatures on all documents necessary to procure beneficial interest regarding the designated Policy(ies) on behalf of the Purchaser."

28.

Krell and Associates, P.A. failed to perform third party verifications of duties of FPI.

29.

FPI and its affiliates failed to "Submit reports to the Purchaser regarding the insured's condition."

30.

The FPI Trust failed to "be the owner and/or irrevocable beneficiary of the death benefits of the Policy(ies) or irrevocable assignee of a Trust" and failed to maintain the premium payments on policies owned by Financial Partners Trust;

31.

FPI failed to do the following:

provide the allocation of purchaser's funds to specific policies purchased;

provide the Certificate of Irrevocable Assignment;

execute an irrevocable beneficiary assignment that has been endorsed by the insurance company to the Trust for the Policy(ies). Upon receipt of the Assignment, the Escrow Agent will instruct the Trust's trustee to issue a Certificate of Irrevocable Assignment to the Purchaser;

provide Purchaser with a Health Settlement summary containing copies of all executed documents, including this Financial Partners Policy Funding Agreement, the certificate representing ownership and the certificate representing beneficiary rights of specific Policy(ies) held within the Trust. Also included are the insurance company's name and policy number and any other documents required to complete each Health Settlement transaction ;

deposit funds adequate enough to pay at least one hundred percent (100%) of premiums that may become due during the life expectancy plus one year of the insured. Krell & Associates, PA is instructed to remit payment Premiums that may become due and payable on a timely basis;

if necessary, apply for the death benefit upon the insured's passing. Upon Financial Partners Trust receiving payment from the insurer, the trustee will issue payment directly to the Purchaser

32.

On pages 3 through 4 of the Funding Agreement, under the heading "Deposit of Funds," FPI represented to Mr. Lindler, as well as other investors, that:

Upon release by the Escrow Agent, a portion of the Purchase Funds shall be disbursed directly to the Health Settlement Provider's escrow account for the purpose of acquiring the designated Policy(ies), whose ownership shall be recorded in the name of Financial Partners Trust.

33.

In fact, upon release by the Escrow Agent, a portion of Mr. Lindler's Purchase Funds were not disbursed directly to the Health Settlement Provider's escrow account for the purpose of acquiring the designated Policy(ies), whose ownership or irrevocable beneficiary rights of the death benefits of the Policy(ies) or irrevocable assignee of a trust, shall be recorded in the name of Financial Partners Trust.  Instead, a portion of Mr. Lindler's Purchase Funds were turned over to ABC and Mr. Sweet and Mrs. Sweet lined their pockets with the remainder.

34.

On page 4 of the Funding Agreement, under the heading "Miscellaneous Provisions," FPI represented to Mr. Lindler, as well as other investors, that: "Neither party shall assign any of its rights nor delegate or subcontract any of its obligations under this Agreement without the prior written consent of the other."

35.

In fact, FPI assigned, delegated, or subcontracted almost all of its rights and obligations to ABC.

36.

On page 3 of the Funding Agreement, FPI represented to Mr. Lindler, as well as other investors, that:

> FPI maintains the right to share ownership and or beneficiary assignment of individual policies. In the case of shared ownership or beneficiary assignment, all premiums will be held in a trust maintained by Mills, Potoczak & Company, located at 27600 Chargrin Blvd, Ste. 200, Cleveland, Ohio 44122.

37.

To the extent that FPI had a purported shared ownership in any policies with ABC, premiums were not held in a trust maintained by Mills, Potoczak & Company.

38.

On page 4 of the Funding Agreement, FPI represented to Mr. Lindler, as well as other investors, that:

> Should an urgent situation take place and Purchaser requires liquidation in their interest in their Health Settlement Investment, FPI will assist Purchaser in reselling their investment for their original purchase price minus a $150.00 escrow fee.

39.

FPI turned Mr. Lindler's money over to ABC and Mr. Sweet and Mrs. Sweet lined their pockets with the remainder. FPI is in no position to assist Mr. Lindler with selling his non-existent investment for the original purchase price minus a $150.00 escrow fee. This is a gross misrepresentation.

40.

In addition to the Funding Agreement, FPI provided Plaintiff with a marketing brochure to induce Plaintiff to invest $12,500.00 with FPI (the "Brochure"). A true and correct copy of the Brochure is attached hereto as Exhibit C.

41.

The Brochure makes a number of representations, promises, and assurances entirely inappropriate for the marketing of high risk securities:

- "Providing above-average-returns for those investors that participate in FPI's Health Settlements and Senior Settlements funding programs."

- "In Health Settlement or Senior Settlement transactions, investors are assured the return of their principal, plus fixed interest, by life insurance companies with assets in the billions of dollars. There has never been a default on a properly executed life insurance policy in the history of the life insurance industry."

- "This allows minimization of risk, and maximization of return."

- "We all want returns of ten to twenty percent-a-year. . . . Through years of experience, we at Financial Partner are able to offer exciting returns without the roller coaster ride the stock market takes you on."

- "What does Financial Partners offer me? Financial Guarantee Bond, Short & Long Term Products, Secured Investment, Diversification, No Speculation, Humanitarian Service, Complete Safety, Higher Returns, Fixed Rate of Return, Peace of Mind, No Stock Market Risk, One-on-One Relationship."

42.

Despite all of these representations and promises, Plaintiff lost or will lose his entire principal investment with FPI.

## Count I – Common Law Fraud

43.

Mr. Lindler reasserts Paragraphs 1 through 42 of this Complaint as if fully set forth in this Count I.

44.

By engaging in the conduct described above, Defendants deceived Mr. Lindler into relying on their representations. Mr. Lindler reasonably and detrimentally relied on Defendants' false representations.

45.

Accordingly, Defendants are liable to Mr. Lindler for common law fraud.

46.

As a proximate result of defendants' intentional misrepresentations, plaintiff has sustained loss and damages in the amount of $12,500.00 plus pre-judgment interest as allowed by law.

47.

Defendants have acted in bad faith, been stubbornly litigious, and caused Plaintiff unnecessary trouble and expense so as to authorize the award to Plaintiff of Plaintiff's reasonable attorneys' fees and expenses incurred in bringing this action pursuant to O.C.G.A. § 13-6-11.

48.

Defendants' conduct is outrageous and aggravating.   They have acted intentionally and with conscious indifference to the consequences in committing these acts of fraud. Defendants' actions in the commission of the intentional tort of fraud constitutes willful misconduct so as to authorize an award of punitive damages.  Accordingly, Plaintiff seeks $500,000.00 in punitive damages to punish, penalize and deter Defendants from such wrongful conduct in the future.

49.

Defendants are jointly and severally liable for all damages suffered by Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally in an amount to be proven at trial, post-judgment interest as allowed by law, punitive and exemplary damages of $500,000.00, or in an amount to be determined by the enlightened conscious of a fair and impartial jury, Plaintiff's

reasonable expenses and attorney's fees incurred in this action, together with all costs, plus interest at the legal rate, and such other and further relief as this Court deems just and proper.

### Count II - Breach of Contract

50.

Mr. Lindler reasserts Paragraphs 1 through 49 of this Complaint as if fully set forth in this Count II.

51.

As stated described above, Defendants were obligated to Mr. Lindler to comply with the terms of the Funding Agreement.   As also descibed above, Defendants did not comply with the terms of the Funding Agreement and accordingly have breached their contract with Mr. Lindler.

52.

FPI's omissions and misrepresentations as described herein constitute breach of contract.

53.

Plaintiff suffered damages as a result of FPI's breach of contract in an amount to be proven at trial.

54.

Defendants have acted in bad faith, been stubbornly litigious, and caused Plaintiff unnecessary trouble and expense so as to authorize the award to Plaintiff of Plaintiff's reasonable attorneys' fees and expenses incurred in bringing this action pursuant to O.C.G.A. § 13-6-11.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be proven at trial, pre and post-judgment interest as allowed by law, their reasonable expenses and attorney's fees incurred in this action, together with all costs, and such other and further relief as this Court deems just and proper.

## Count III – Anticipatory Breach of Contract

55.

Mr. Lindler reasserts Paragraphs 1 through 54 of this Complaint as if fully set forth in this Count III.

56.

As stated above, through the Funding Agreement, Defendants offered Mr. Lindler an investment. Mr. Lindler invested $12,500.00 with FPI. Pursuant to the terms of the Funding Agreement, Mr. Lindler was to receive $18,000.00 on January 18, 2009, or in the event that the proported insured's demise is not

according to schedule, then pursuant to the terms of the bond insuring the policy, he will receive $18,000.00 90 days after January 18, 2009.

57.

Because FPI invested Mr. Lindler's $12,500.00 in ABC, a bogus viatical company, while the rest was used to line Mr. and Mrs. Sweet's pockets, it is all but certain that Mr. Lindler will not earn 44% on his investment. Worse yet, it is all but certain that, in the best case scenario, Mr. Lindler will only receive 10¢ on the dollar or $1,250.00 of his original $12,500.00 investment. So instead of receiving $18,000.00 in exchange for his $12,500.00 investment, as Defendants repressented, Mr. Lindler will only receive $1,250.00, **if he is lucky**.

58.

FPI's conduct as described herein constitutes an anticipatory breach of contract.

59.

Plaintiff will suffer damages as a result of FPI's anticipatory breach of contract in an amount to be proven at trial.

60.

Defendants have acted in bad faith, been stubbornly litigious, and caused Plaintiff unnecessary trouble and expense so as to authorize the award to Plaintiff

of Plaintiff's reasonable attorneys' fees and expenses incurred in bringing this action pursuant to O.C.G.A. § 13-6-11.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be proven at trial, pre and post-judgment interest as allowed by law, their reasonable expenses and attorney's fees incurred in this action, together with all costs, and such other and further relief as this Court deems just and proper.

## Count IV - Conversion

61.

Mr. Lindler reasserts Paragraphs 1 through 60 of this Complaint as if fully set forth in this Count IV.

62.

As stated above, through the Funding Agreement, Defendants offered Mr. Lindler an investment. Mr. Lindler invested $12,500.00 with FPI. Pursuant to the terms of the Funding Agreement, FPI was to purchase a life insurance policy for Mr. Lindler, and Mr. Lindler is to receive $18,000.00 on January 18, 2009 or 90 days therafter. Instead of purchasing a life insurance policy for Mr. Lindler, as FPI represented it would do, FPI invested a portion of Mr. Lindler's money in a bogus viatical company and Defendants converted the remainder to their own use.

63.

Accordingly, Defendants are liable to Mr. Lindler for conversion.

64.

Defendants have acted in bad faith, been stubbornly litigious, and caused Plaintiff unnecessary trouble and expense so as to authorize the award to Plaintiff of Plaintiff's reasonable attorneys' fees and expenses incurred in bringing this action pursuant to O.C.G.A. § 13-6-11.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be proven at trial, pre and post-judgment interest as allowed by law, their reasonable expenses and attorney's fees incurred in this action, together with all costs, and such other and further relief as this Court deems just and proper.

### Count V - Unjust Enrichment

65.

Mr. Lindler reasserts Paragraphs 1 through 64 of this Complaint as if fully set forth in this Count V.

66.

As stated above, through the Funding Agreement, Defendants offered Mr. Lindler an investment. Mr. Lindler invested $12,500.00 with FPI. Pursuant to the terms of the Funding Agreement, FPI was to purchase a life insurance policy for

Mr. Lindler.  Instead of purchasing a life insurance policy for Mr. Lindler as FPI represented it would do, Defendants enriched themselves at Mr. Lindler's expense.

67.

Accordingly, Defendants are liable to Mr. Lindler for unjust enrichment.

68.

Defendants have acted in bad faith, been stubbornly litigious, and caused Plaintiff unnecessary trouble and expense so as to authorize the award to Plaintiff of Plaintiff's reasonable attorneys' fees and expenses incurred in bringing this action pursuant to O.C.G.A. § 13-6-11.

WHEREFORE, Plaintiff demands judgment against FPI in an amount to be proven at trial, pre and post-judgment interest as allowed by law, their reasonable expenses and attorney's fees incurred in this action, together with all costs, and such other and further relief as this Court deems just and proper.

## Count VI – Violations of Sections 5(a) and 5(c) the Securities Act of 1933

69.

Mr. Lindler reasserts Paragraphs 1 through 68 of this Complaint as if fully set forth in this Count VI.

70.

Defendants, directly or indirectly, singly or in concert with others, have been offering to sell, selling and delivering after sale, certain securities, and have been, directly and indirectly: (a) making use of the means and instruments of transportation and communication in interstate commerce and of the mails to sell securities, through the use of written contracts, offering documents, and otherwise; (b) carrying and causing to be carried through the mails and interstate commerce by the means and instruments of transportation, such securities for the purpose of sale and for delivery after sale; and (c) making use of the means or instruments of transportation and communication in interstate commerce and of the mails to offer to sell such securities.

71.

As described above Defendants' securities were offered and sold to the public through a general solicitation of investors. No registration statements were ever filed with the Securities and Exchange Commission or otherwise in effect with respect to these transactions.

72.

Accordingly, Defendants have violated Sections 5(a) and 5(c) of the Securities Act of 1933 (15 U.S.C. §§77e(a) and 77e(c)).

73.

Defendants have acted in bad faith, been stubbornly litigious, and caused Plaintiff unnecessary trouble and expense so as to authorize the award to Plaintiff of Plaintiff's reasonable attorneys' fees and expenses incurred in bringing this action pursuant to O.C.G.A. § 13-6-11.

WHEREFORE, Plaintiff demands judgment against FPI in an amount to be proven at trial, pre and post-judgment interest as allowed by law, their reasonable expenses and attorney's fees incurred in this action, together with all costs, and such other and further relief as this Court deems just and proper.

## Count VII – Violations of Section 17(a) of the Securities Act of 1933

74.

Mr. Lindler reasserts Paragraphs 1 through 73 of this Complaint as if fully set forth in this Count VII.

75.

Defendants, directly or indirectly, singly, or in concert with others, in the offer and sale of securities, by use the means and instruments of transportation and communication in interstate commerce and of the mails, have: (a) employed devices, schemes or artifices to defraud; (b) obtained money or property by means of untrue statements of material fact or omissions to state material facts necessary

in order to make the statements made, in the light of the circumstances under which they were made not misleading; and (c) engaged in transactions, practices or courses of business which operate or would operate as a fraud or deceit.

76.

As part of and in furtherance of this scheme, Defendants, directly and indirectly, prepared, disseminated or used contracts, written offering documents, promotional materials, investor and other correspondence, and oral presentations, which contained untrue statements of material fact and which omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, including, but not limited to those statements and omissions set forth in the paragraphs above.

77.

Defendants made the above-referenced misrepresentations and omissions knowingly or with severe recklessness with regard for the truth. Defendants were also negligent in their actions regarding the representations and omissions alleged herein.

78.

By reason of the foregoing, Defendants have violated Section 17(a) of the Securities Act of 1933 (15 U.S.C. § 77q(a)).

79.

Defendants have acted in bad faith, been stubbornly litigious, and caused Plaintiff unnecessary trouble and expense so as to authorize the award to Plaintiff of Plaintiff's reasonable attorneys' fees and expenses incurred in bringing this action pursuant to O.C.G.A. § 13-6-11.

WHEREFORE, Plaintiff demands judgment against FPI in an amount to be proven at trial, pre and post-judgment interest as allowed by law, their reasonable expenses and attorney's fees incurred in this action, together with all costs, and such other and further relief as this Court deems just and proper.

### Count VIII – Violation of Section 12(a) of the Securities Act of 1933

80.

Mr. Lindler reasserts Paragraphs 1 through 79 of this Complaint as if fully set forth in this Count VIII.

81.

Section 12 (a) of the 33 Act states that

[a]ny person who--

(1)     offers or sells a security in violation of section 5, or

(2)     offers or sells a security (whether or not exempted by the provisions of section 3, other than paragraphs (2) and (14) of subsection (a) of said section), by the use of any means or instruments of transportation or communication in interstate commerce or of the

mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable, subject to subsection (b), to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

82.

As stated more thoroughly above, Defendants have engaged in the proscribed activity, and in the Funding Agreement and Brochure, Defendants made numerous untrue statements of a material fact. Moreover, Mr. Lindler did not know such statements were untrue at the time they were made.

83.

Accordingly, Defendants are liable to Mr. Lindler pursuant to Section 12(a) of the Securities Act of 1933, as amended.

84.

Defendants have acted in bad faith, been stubbornly litigious, and caused Plaintiff unnecessary trouble and expense so as to authorize the award to Plaintiff

of Plaintiff's reasonable attorneys' fees and expenses incurred in bringing this action pursuant to O.C.G.A. § 13-6-11.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be proven at trial, pre and post-judgment interest as allowed by law, their reasonable expenses and attorney's fees incurred in this action, together with all costs, and such other and further relief as this Court deems just and proper.

### Count IX – Violation of Section 10(b) of the Exchange Act and Rule 10b-5

85.

Mr. Lindler reasserts Paragraphs 1 through 84 of this Complaint as if fully set forth in this Count IX.

86.

Defendants, directly or indirectly, singly, or in concert with others, in connection with the purchase and sale of securities, by use the means and instruments of interstate commerce and by use of the mails, have: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made not misleading; and (c) engaged in acts, practices, and courses of business which operated as a fraud or deceit upon Mr. Lindler.

87.

As part of and in furtherance of their scheme, Defendants, directly and indirectly, prepared, disseminated or used contracts, written offering documents, promotional materials, investor and other correspondence, and oral presentations, which contained untrue statements of material facts and which omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, including, but not limited to those statements and omissions set forth in the paragraphs above.

88.

Defendants made the above-referenced misrepresentations and omissions knowingly or with severe recklessness regarding the truth.

89.

By reason of the foregoing, Defendants have violated the provisions of Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) and Rule 10b-5 thereunder (17 C.F.R. § 240.10b-5).

90.

Defendants have acted in bad faith, been stubbornly litigious, and caused Plaintiff unnecessary trouble and expense so as to authorize the award to Plaintiff

of Plaintiff's reasonable attorneys' fees and expenses incurred in bringing this counterclaim action pursuant to O.C.G.A. § 13-6-11.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be proven at trial, pre and post-judgment interest as allowed by law, their reasonable expenses and attorney's fees incurred in this action, together with all costs, and such other and further relief as this Court deems just and proper.

## Count X – Fraud in Violation of the South Carolina Uniform Securities Act

91.

Mr. Lindler reasserts Paragraphs 1 through 90 of this Complaint as if fully set forth in this Count X.

92.

SC ST § 35-1-1210, the South Carolina securities fraud statute applies "to persons who sell or offer to sell when (a) an offer to sell is made in [South Carolina] ...." SC ST § 35-1-180.

93.

Defendants offered to sell and sold the Bond to Mr. Lindler in South Carolina.

94.

Pursuant to SC ST § 35-1-1210, "It is unlawful for any person, in connection with the offer, sale or purchase or purchase of any security, directly or indirectly, to: (1) employ any device, scheme, or artifice to defraud; (2) make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or (3) engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person."

95.

As more fully described above, Defendants did all things enumerated in order to sell the securities to Mr. Lindler. Accordingly, as Defendants committed securities fraud upon Mr. Lindler in violation of the South Carolina Uniform Securities Act, Defendants are liable to Mr. Lindler pursuant to SC ST § 35-1-1490. Defendants are in violation of the South Carolina Uniform Securities Act.

96.

Defendants have acted in bad faith, been stubbornly litigious, and caused Plaintiff unnecessary trouble and expense so as to authorize the award to Plaintiff of Plaintiff's reasonable attorneys' fees and expenses incurred in bringing this action pursuant to O.C.G.A. § 13-6-11.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be proven at trial, pre and post-judgment interest as allowed by law, their reasonable expenses and attorney's fees incurred in this action, together with all costs, and such other and further relief as this Court deems just and proper.

## Count XI – Securities Registration Violations of the South Carolina Uniform Securities Act

### 97.

Mr. Lindler reasserts Paragraphs 1 through 96 of this Complaint as if fully set forth in this Count XI.

### 98.

"It is unlawful for any person to offer or sell any security in [South Carolina] unless (a) it is registered under [the South Carolina Uniform Securities Act], (b) the transaction is exempted under 35-1-310 or 35-1-320, or (c) it is a federal covered security." SC ST § 35-1-810.

### 99.

Pursuant to SC ST § 35-1-1490 , "[a]ny person who: (1) offers or sells a security in violation of ... Section 35-1-810 ... is liable to the person buying the security."

100.

The securities did not meet any of the requirements of SC ST § 35-1-810. Accordingly, Defendants are liable to Mr. Lindler pursuant to SC ST § 35-1-1490.

101.

FPI has acted in bad faith, been stubbornly litigious, and caused Plaintiff unnecessary trouble and expense so as to authorize the award to Plaintiff of Plaintiff's reasonable attorneys' fees and expenses incurred in bringing this action pursuant to O.C.G.A. § 13-6-11.

WHEREFORE, Plaintiff demands judgment against FPI in an amount to be proven at trial, pre and post-judgment interest as allowed by law, their reasonable expenses and attorney's fees incurred in this action, together with all costs, and such other and further relief as this Court deems just and proper.

## Count XII – Broker-Dealer/Agent Registration Violations of the South Carolina Uniform Securities Act

102.

Mr. Lindler reasserts Paragraphs 1 through 101 of this Complaint as if fully set forth in this Count XII.

103.

"It is unlawful for any person to transact business as a broker-dealer or agent unless he is registered under [the South Carolina Uniform Securities Act] or

exempt from licensing under the [the South Carolina Uniform Securities Act]." SC ST § 35-1-410.

104.

Pursuant to SC ST § 35-1-1490 , "[a]ny person who: (1) offers or sells a security in violation of ... Section 35-1-410 ... is liable to the person buying the security."

105.

As Defendants were not registered as broker-dealers or agents under the South Carolina Uniform Securities Act or exempt from licensing, they are liable to Mr. Lindler pursuant to SC ST § 35-1-1490.

106.

FPI has acted in bad faith, been stubbornly litigious, and caused Plaintiff unnecessary trouble and expense so as to authorize the award to Plaintiff of Plaintiff's reasonable attorneys' fees and expenses incurred in bringing this action pursuant to O.C.G.A. § 13-6-11.

WHEREFORE, Plaintiff demands judgment against FPI in an amount to be proven at trial, pre and post-judgment interest as allowed by law, their reasonable expenses and attorney's fees incurred in this action, together with all costs, and such other and further relief as this Court deems just and proper.

## Count XIII – Alter Ego Liability of All Defendants

### 107.

Mr. Lindler reasserts Paragraphs 1 through 106 of this Complaint as if fully set forth in this Count XIII.

### 108.

Upon information and belief, Mr. Sweet is an officer, director, shareholder, member, or manager of FPI.

### 109.

Upon information and belief, Mrs. Sweet is an officer, director, shareholder, member, or manager of FPI.

### 110.

Upon information and belief, Mr. and Mrs. Sweet have commingled personal and corporate assets and income and treated the assets and income of FPI as their own.

### 111.

Upon information in belief, Mr. and Mrs. Sweet are alter egos, agents or instrumentalities of FPI and have attempted to conceal assets and income from various creditors, including Plaintiff.

112.

Upon information in belief, Defendants fail to segregate and separately account for the inventory of FPI from Mr. and Mrs. Sweets personal assets so as to make it impossible to identify the inventory and assets of FPI.

113.

Mr. and Mrs. Sweet have improperly operated FPI so as to become responsible for their debts, allowing Plaintiff to "pierce the corporate veil" to recover against them personally.

114.

In light of the Defendants' abuse of the corporate form, observing the fiction of separate corporate existence would sanction fraud and promote injustice against Plaintiff.

115.

Plaintiff is entitled to treat the Defendants as assimilated and constituting one entity for the purpose of collecting any judgment rendered herein in favor of the Plaintiff.

116.

The Defendants have acted in bad faith, have been stubbornly litigious, and have caused Plaintiff unnecessary trouble and expense so as to allow Plaintiff to

recover its reasonable attorney's fees and expenses incurred in bringing this action pursuant to O.C.G.A. § 13-6-11.

WHEREFORE, Plaintiff demands judgment declaring Mr. Sweet and Mrs. Sweet to be alter egos of FPI and that the Defendants in fact constitute one entity, and that judgment be entered against all of the Defendants, jointly and severally, in an amount to be determined at trial, together with all costs and Plaintiff's reasonable attorney's fees incurred in bringing this action pursuant to O.C.G.A. § 13-6-11, and such other and further relief as this Court deems just and proper.

## Conclusion

Wherefore, Mr. Lindler prays for the following relief:

1) Rescission;

2) Compensatory Damages in the amount of $12,500.00

3) Punitive Damages in the amount of $500,000.00;

4)  Attorney's Fees in an amount to be determined at trial;

5) Pre-judgment interest as allowed by law;

6) A Trial by Jury; and

7) Such other and further relief as this Court deems just and proper.

Dated: December 3, 2007.

Respectfully submitted,

Rand J. Csehy
GA Bar No. 199756
The Csehy Law Group, PC
1077 Spring Street, NW
Atlanta, GA 30309
(t) 404.817.3708
(f) 404.817.3709
(e) rand@clgatlanta.com